```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
In Re: LYONDELL CHEMICAL CO., et al.   :
                                       :
                    Debtors,           :
                                       :          16cv518 (DLC)
---------------------------------------:
                                       :          OPINION & ORDER
                                       :          ‾‾‾‾‾‾‾‾‾‾‾‾‾
EDWARD S. WEISFELNER, as Litigation    :
Trustee of the LB Litigation Trust     :
                                       :
                    Trustee,           :
                                       :
                    -v-                :
                                       :
HOFMANN, et al.                        :
                    Shareholders.      :
                                       :
---------------------------------------X
```

APPEARANCES

For Trustee:

Sigmund S. Wissner-Gross
May Orenstein
Marek P. Krzyzowski
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036

Steven D. Pohl
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111

For Shareholders:

Philip D. Anker
Ross E. Firsenbaum
Hanna Baek
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Ari J. Savitzky
WILMER CUTLER PICKERING HALE & DORR LLP
1975 Pennsylvania Avenue NW
Washington, DC 20006

DENISE COTE, District Judge:

This Court recently held in In re Lyondell Chemical Co.,
16cv518 (DLC), 2016 WL 4030937 (S.D.N.Y. July 27, 2016), that
the knowledge of a corporation's CEO, acting within the scope of
his authority, may be imputed to the corporation.  The
defendants filed a motion for reconsideration, or in the
alternative, for certification pursuant to 28 U.S.C. § 1929(b).
The motion for reconsideration fails to point to any matter or
binding authority overlooked by the Court in its initial
disposition of the case, and is denied.  The motion for
certification is also denied because the defendants have failed
to establish that there is substantial ground for difference of
opinion on a controlling question of law.

**BACKGROUND**

General familiarity with the facts and procedural
background of this case is presumed, and therefore the facts and
background are summarized here only briefly.  This case arises
out of the 2007 merger of Lyondell Chemical Company
("Lyondell"), and an indirect subsidiary of the large publicly-
traded petrochemicals company Basell AF S.C.A. ("Basell"), a
Luxembourg entity controlled by billionaire investor Leonard

2

Blavatnik ("Blavatnik").  It is alleged that, in May 2007, after
receiving notice that Blavatnik had acquired a 10% toehold
position in Lyondell, Lyondell's CEO and Board Chairman, Dan
Smith ("Smith"), instructed management to "refresh" the
company's financial projections.  Per Smith's instructions,
management improperly added nearly $2 billion of additional
total company earnings before interest, tax, depreciation and
amortization ("EBITDA") to its 2007 Long Range Plan.  Smith
presented these inflated projections to the Board and used them
as well to negotiate a higher offer from Blavatnik.  Smith
presented Blavatnik's offer to the Lyondell Board for its
consideration and approval in mid-July.  The Lyondell Board
unanimously voted to approve the merger.

    After the deal closed in December, Lyondell, which had
taken on approximately $21 billion of secured indebtedness from
Blavatnik's creditors, paid its shareholders $12.5 billion (the
"Shareholder Payments").  As a Board member, Smith received over
$100 million in merger-related consideration.  In January 2009,
after laboring under negative liquidity, lower oil prices and
other adverse developments, Lyondell filed for chapter 11
protection.  In re Lyondell Chem. Co., No. 09-10023 (Bankr.
S.D.N.Y. Jan. 6, 2009).  The bankruptcy court appointed a
Trustee to litigate on behalf of the unsecured creditors.  The
Trustee now seeks to claw back Shareholder Payments pursuant to

3

an intentional fraudulent transfer claim brought under 11 U.S.C. § 548(a)(1)(A).[1]

The bankruptcy court has twice dismissed the Trustee's intentional fraudulent transfer claim against Lyondell.  See In re Lyondell Chem. Co., 503 B.R. 348 (Bankr. S.D.N.Y. 2014) ("Lyondell I"); In re Lyondell Chem. Co., 541 B.R. 172 (Bankr. S.D.N.Y. 2015) ("Lyondell II").  In so doing, the court held that the appropriate standard for imputation was "whether the individual whose intent is to be imputed 'was in a position to control the disposition of [the transferor's] property.'" Lyondell I, 503 B.R. at 388 (citing In re Roco Corp., 701 F.2d 978, 984 (1st Cir. 1983)).  The court found that the Trustee had failed to plead facts "supporting intent to hinder, delay or defraud on the part of a critical mass of the directors who [approved the LBO]," or "plausibly suggesting that Smith (who was only one member of a multi-member Board) or others could nevertheless control the disposition of [Lyondell's] property." Id. at 389 (citation omitted).  In its second dismissal, the

---

[1] Pursuant to 11 U.S.C. § 548(a)(1)(A), the trustee may "avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . ."

court added that "it was the Board's intent that was critical," and that the Trustee had failed to plead "the intent of a critical mass of Board members who might have that [fraudulent] intent on their own" or that Smith or another, by "reason of the ability to control them, had caused the critical mass to form that intent." Lyondell II, 541 B.R. at 177 & n.18.

On July 27, 2016, this Court reversed the bankruptcy court's Lyondell II decision and reinstated the intentional fraudulent conveyance claim. See In re Lyondell Chem. Co., 16cv518 (DLC), 2016 WL 4030937 (S.D.N.Y. July 27, 2016) ("Lyondell III"). After surveying the corpus of Delaware agency law, as well as relevant Restatement sections, this Court held that "Smith's knowledge and intent may be imputed to Lyondell." Id. at *9-11. The Court also found that the Trustee had pleaded facts sufficient to support its intentional fraudulent conveyance claim. Id. at *15.

The Shareholder Defendants filed the present motion for reconsideration, or in the alternative for certification pursuant to 28 U.S.C. § 1292(b) on August 10, 2016. The motion has been joined by several shareholder entities and individuals.[2]

---

[2] The following individuals and/or entities have joined the Shareholder Defendants' motion:  Thomas Gwinford Barton Charles Schwab & Co., Inc. Customer IRA Rollover, James Floyd Bisset Charles Schwab & Co., Inc. Customer IRA Contributory, Joseph Dibenedetto Jr. TTEE Joseph Dibenedetto Jr. MD Inc. Def Cont U/A DTD 10/01/84 Account 1, R Emery & D Emery TTEE Robert L & Dana M

The motion became fully submitted on September 9.  The Shareholder Defendants do not challenge in this motion the holding that the Trustee adequately pleaded Smith's fraudulent knowledge and intent.

## DISCUSSION

The standard for granting a motion for reconsideration is "strict."  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (discussing a motion under Rule 59(e), Fed. R. Civ. P.).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  Id. (citation omitted).  "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

---

Emery Family U/A DTD 06/22/1998, Alfred R. Hofmann Charles Schwab & Co., Inc. Customer IRA Contributory, William J. Hughes Charles Schwab & Co., Inc. Customer IRA Contributory, Michael Jarrett IRA, Individual 27, Kermit Meade, Lampost Blue Chip Fund LP, Timothy Ord & Mary B. Ord JT Ten, Timothy Ord UTA Charles Schwab & Co., Inc. IRA, Rollover DTD 01/14/97, Mary B. Ord UTA Charles Schwab & Co., Inc. IRA Contributory DTD 10/6/1991, Timothy Ord UTA Charles Schwab & Co., Inc. IRA, Contributory DTD 10/04/91, and Trust 9; Virginia Lyon, Arthur Lee, and Nancy Lee; Sano Investments LLC; Sanford Saul Wadler; Pension Fund 1, Pension Fund 2, and OP&F/Intechl; Individual 56 and Neil T. Eigen Charles Schwab and Co., Inc. Customer IRA Rollover; Bank 3 and Pension Fund 21; Pension Fund 6; ZLP Master Opportunity Fund, Ltd.; Cato Enterprises LLC Arbitrage Account; Corporation 44; and Trust 17.

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable
Tr., 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).  It is
"not a vehicle for relitigating old issues, presenting the case
under new theories, securing a rehearing on the merits, or
otherwise taking a second bite at the apple."  Analytical
Surveys, 684 F.3d at 52 (citation omitted).

The Shareholder Defendants' motion seeks reconsideration of
just one issue: whether the knowledge and intent of a corporate
officer, acting within the scope of his authority, may be
imputed to the corporation if the officer lacks the power to
cause the principal to take the act giving rise to the
principal's liability.  In Lyondell III, the Court held that
Smith's knowledge that the EBITDA figures were fraudulent, as
well as his intent in creating and presenting them in connection
with the merger, could be imputed to Lyondell for purposes of
imposing liability under § 548(a)(1)(A).  Lyondell III, 2016 WL
4030937, at *10.  The defendants do not dispute that it was
within Smith's authority to seek refreshed financial
projections, to present those figures to the Board, and to
negotiate with Blavatnik in the lead-up to the merger.  Nor do
they dispute that Smith's fraudulent knowledge and intent were
acquired while he was acting within the scope of his authority
as an officer of Lyondell.  Instead, the defendants argue that
the basis for Lyondell's liability under 11 U.S.C. §

548(a)(1)(A) is the Board's decision to approve the shareholder transfer, and therefore the Board's vote must have made "with actual intent to hinder, delay, or defraud" Lyondell's creditors.  Since Smith could not approve the Shareholder Payments by himself, they argue that his intent cannot be imputed to Lyondell.

The defendants do not identify any new or controlling authorities to support this argument.  Instead, they advance alternative interpretations of some of the authorities discussed in Lyondell III.  See Analytical Surveys, 684 F.3d at 52 ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.").  A closer look at the facts underlying these authorities confirms the fundamental principle that the knowledge and actions of a corporation's officers and directors, acting within the scope of their authority, is imputed to the corporation.

I.  **Imputation**

Bedrock principles of agency law provide that the knowledge of an agent, acquired while acting within the scope of employment, is imputed to his principal.  See Restatement (Third) of Agency § 5.03 ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the

principal."); Restatement (Second) of Agency § 272 ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information."). The Delaware courts have long recognized this foundational principle of agency law. See, e.g., Nolan v. Eastern Co., 241 A.2d 885, 891 (Del. Ch. 1968), aff'd, 249 A.2d 45 (Del. 1968) ("Knowledge of an agent acquired while acting within the scope of his authority is imputable to the principal.").

Transposing these fundamental agency principles to the corporate context, it is "[a] basic tenet of [Delaware] corporate law, derived from principles of agency law . . . that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself." Stewart v. Wilmington Tr. SP Servs., Inc., 112 A.3d 271, 302-03 (Del. 2015); see generally 3 Fletcher Cyc. Corp. § 790 ("[T]he general rule is well established that a corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of employment within the scope of his or her authority . . . ."); 18B Am. Jur. 2d Corps. § 1413 ("In accordance with agency principles, a corporation

generally is charged with knowledge of facts that its agents learn within the scope of their employment.").

Delaware courts have not shied away from imputing an officer's conduct to the corporation, even where the officer acts fraudulently or causes injury to third persons through illegal conduct: "Though at [a] superficial level it may appear harsh to hold an 'innocent' corporation (and, ultimately, its stockholders) to answer for the bad acts of its agents, such corporate liability is essential to the continued tolerance of the corporate form, as any other result would lack integrity." Stewart, 112 A.3d at 303.  This is because, as Delaware courts have repeatedly recognized, a corporation is an artificial being that "must act through human beings."  In re American Int'l Grp., Inc., Consol. Derivative Litig., 976 A.2d 872, 893 (Del. Ch. 2009).  Thus, "[w]hen those human beings seek to increase corporate profits by causing the corporation to engage in illegal conduct, the corporation is responsible to innocent third parties."  Id.

Even in the case of an outside director, knowledge possessed in connection with her service as a director is imputed to the corporation.  As one authority has explained:

> [S]ince directors do not individually represent the
> corporation and have no power to bind it except
> collectively as a board, knowledge of facts acquired
> by an individual director is not notice to the
> corporation unless the information is communicated to

10

the other directors. . . . However, . . . [k]nowledge
relevant to action the board is taking possessed by a
director who is present and acting at a meeting of the
board, irrespective of when or how it may have been
acquired, is generally imputed to the corporation,
even if it's not actually communicated to the other
members of the board.  In such a case the director has
the knowledge while acting in an official capacity and
is under a duty to communicate it.

1 Treatise on the Law of Corp. § 8.15 (3d).

With these fundamental principles in mind, the arguments
advanced by the Shareholder Defendants in the present motion for
reconsideration will be addressed.  The Shareholder Defendants
principally contest the interpretation of Hecksher v. Fairwinds
Baptist Church, Inc., 115 A.3d 1187 (Del. 2015), and Stewart in
Lyondell III.  See Lyondell III, 2016 WL 4030937, at *9-11
(discussing Hecksher and Stewart).  But, as described below, the
facts of Hecksher and Stewart support the imputation principles
set forth above and previously in Lyondell III.[3]

A.   **Hecksher v. Fairwinds Baptist Church, Inc.**

In Hecksher, the Delaware Supreme Court held that "[a]n
employee's knowledge can be imputed to her employer if she
becomes aware of the knowledge while she is in the scope of
employment, her knowledge pertains to her duties as an employee,
and she has the authority to act on the knowledge."  115 A.3d at
1200-01 (emphasis added) (citation omitted).  The defendants

[3] The parties do not dispute that Delaware law governs this
issue.  See Lyondell III, 2016 WL 4030937, at *9.

interpret this "authority to act on the knowledge" clause as imposing a limitation on the general rule that an agent's knowledge will be imputed to the principal so long as the agent is acting within the scope of his employment.  The defendants argue that the clause "authority to act on the knowledge" means that the employee must be able to effectuate all of the challenged conduct in this case, that is, that Smith must have had the power by himself to approve the Shareholder Payments or must have caused the Board to do so.  The facts and analysis underlying the Hecksher case do not support this proposed limitation.

In Hecksher, a student sued her former school, alleging that one of its teachers had sexually abused her.  Id. at 1191. The court considered whether the school had been grossly negligent under Delaware's Child Victim's Act for failing to prevent that sexual abuse.  The Child Victim's Act provides in relevant part:

> If the person committing the act of sexual abuse against a minor was employed by an institution, agency, firm, business, corporation, or other public or private legal entity that owned a duty of care to the victim, or the accused and the minor were engaged in some activity over which the legal entity had some degree of responsibility or control, damages against the legal entity shall be awarded . . . only if there is a finding of gross negligence on the part of the legal entity.

10 Del. Code Ann. tit. 10, § 8145(b) (2009).  Accordingly, liability under the Child Victim's Act is triggered by an entity's (in this case, the school's) failure to supervise or otherwise take action against one of its errant employees.

The relevant facts of the Hecksher case are as follows: One of the school's employees had knowledge that a teacher (who was also her husband) had been abusing his student.  This employee failed to report the abuse to her employer.  In addition to deciding whether the school could be held vicariously liable for the teacher's tortious failure to report the alleged sexual abuse, the Hecksher court also held that the teacher's knowledge could be imputed to the school, which could then be liable for gross negligence because it failed to act on the knowledge.  See Hecksher, 115 A.3d at 1200.  As it explained, "[i]f [the employee] was acting within the scope of her employment when she learned about the abuse, . . . [her] knowledge can be imputed to [the school], who could then be liable for gross negligence because it failed to act on that knowledge."  Id. (Emphasis added.)

The school attempted, without success, to invoke a narrow exception to the general imputation principles outlined above: the adverse interest exception.  See id. at 1202, 1204-06.  The school argued that the employee had not been acting within the

scope of her employment when she acquired knowledge of the
teacher's abuse because the employee's interests were adverse to
the school's interests.  The adverse interest exception provides
that "where the agent's action is totally adverse to the
interests of his principal, the law will not impute knowledge of
the bad act to the principal."  Id. at 1204.  In other words,
"an employee's knowledge will not be imputed to the employer if
it arises out of the employee's wrongful conduct, undertaken
solely to benefit the employee or a third party, with no benefit
to the employer."  Id. at 1201.

 In order to determine whether the employee's knowledge
fell within the adverse interest exception, the court first
determined whether the employee was acting within the scope of
employment when she acquired the relevant knowledge.  The
"authority to act on the knowledge" is one of the tests
developed by the Restatement and used by Hecksher to decipher
when knowledge is acquired within the scope of employment.  Id.

Accordingly, in rejecting the school's effort to rely
on the adverse interest exception, Hecksher first found
that the employee acquired knowledge of the teacher's
wrongdoing when acting within the scope of her employment
because she had "the authority to act" on knowledge of the
abuse by reporting it to school authorities.  Id. at 1202.
The court then proceeded to find, with respect to the

14

adverse interest exception, that the teacher's interests were not wholly adverse to those of the school and therefore did not prevent the imputation of her knowledge to the principal.  See id. at 1206 ("[A] reasonable juror could conclude that [the teacher's] failure to report abuse by . . . her co-worker . . . was motivated in part by her desire to protect [the school].").

Thus, while the employee had the "authority to act on the knowledge," insofar as she could report her knowledge of the teacher's misconduct to her employer, see id. at 1201-02 (noting that employees were "expected to report sexual abuse or suspicions of sexual abuse of students" and to "act if they saw another employee acting inappropriately"), she still lacked the authority to take official school action against the teacher, such as ordering his dismissal.  Similarly, Smith had the "authority to act on [his] knowledge," insofar as he could communicate the falsity of the EBITDA projections to the Lyondell Board.  Like the employee in Hecksher, however, Smith ultimately lacked the authority to effectuate the act -- in this case, the Board vote -- giving rise to Lyondell's liability under 11 U.S.C. § 548(a)(1)(A).  In either case, having the "authority to act" is simply another formulation of the fundamental principle that an

15

agent must have acquired knowledge while acting within the scope of employment in order for such knowledge to be imputed to the principal.

Hecksher's own citations underscore that its discussion about the "authority to act" is directed to the determination about the scope of employment only, and does not represent any general limitation on the long-established principle that an employee's knowledge is imputed to her employer when acquired within the scope of employment.  Hecksher indicates that the requirement that an agent have the "authority to act on the knowledge" is derived from Vechery v. Hartford Accounting & Indemnity Insurance Co., 121 A.2d 681 (Del. 1956), and 2 Am. Jur. Agency § 374.  Hecksher, 115 A.3d at 1201 n.51.

In Vechery, the victim of a car accident brought an enforcement suit against a driver and his insurance company. The driver received notice of the suit but did not notify his insurance company of the lawsuit, as required by his policy. The driver's father was an agent for the insurer but the scope of his agency was limited and did not include giving notice to the company of lawsuits brought against its insureds.  Vechery, 121 A.2d at 683-84.  At issue in the case was whether a father's actual knowledge (that his son, the insured driver, had been served with notice of suit) could be imputed to the insurance company.  The court held that the father's knowledge could not

be imputed to the insurance company because the father's agency was "limited to negotiating the sale of insurance." Id. at 684. Moreover, the father was not a "managing or general agen[t]," nor was he given any "general powers involving the exercise of judgment or discretion." Id.

In declining to impute the father's knowledge to the insurance company, the court noted that "[t]he agent having such knowledge or receiving such notice must have authority to act in regard to those matters affected by the knowledge or notice."[4] Id. As the court's analysis makes clear, however, the

---

[4] This language was borrowed from 2 Am. Jur. Agency § 374 (1936), which provides that

> The general rule accepted by the authorities is that the knowledge possessed or notice received by an agent is chargeable to the principal when not actually communicated only when relevant to matters intrusted to the agent and within his authority so that it is his duty to communicate such knowledge or notice to the principal. Knowledge acquired or notice received by an agent, which does not pertain to the duties of the agent, which does not relate to the subject-matter of the employment, or which affects matters outside the scope of his agency, is not chargeable to the principal unless actually communicated to him. In other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects.

(citation omitted) (emphasis added). As the full text of this section makes clear, having the "authority to deal in reference to those matters" is simply a shorthand for the requirements for imputation listed in the preceding sentence: that the knowledge "pertain to the duties of the agent," that the knowledge "relate to the subject-matter of the [agent's] employment," and that the knowledge pertain to matters not "outside of the scope of [the] agency."

requirement that an agent have "authority to act in regard to those matters affected by the knowledge" simply restates the uncontroversial fact that an agent's knowledge will not be imputed to his principal if the knowledge was acquired outside the scope of his employment.  See, e.g., 3 Fletcher Cyc. Corp. § 790 ("[T]he general rule is well established that a corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of employment within the scope of his or her authority . . . .").

In Vechery, the court found that it was beyond the father's scope of employment to report notices of suit against the company's insured drivers since the father had "no general powers involving the exercise of judgment or discretion."  121 A.2d at 684.  In other words, the father had "no authority to act in regard to those matters affected by [his] knowledge" since he was only tasked with negotiating the sale of insurance.  Id.  As such, the father's knowledge could not be imputed to the company.  By contrast, as CEO of Lyondell, Smith had the authority, within the scope of his employment, both to seek refreshed EBITDA projections and to present such projections to the Board.  Lyondell III, 2016 WL 4030937, at *10.  Accordingly,

his knowledge related to matters he was authorized to perform and may be imputed to the Lyondell Board.

**B.    Stewart v. Wilmington Trust SP Services, Inc.**

The second decision the Shareholder Defendants discuss is Stewart, 112 A.3d 271.  As recited above, Stewart observed that "a basic tenet of [Delaware] corporate law, derived from principles of agency law, is that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself."  Id. at 302-03.  In Stewart, the Trustee for defunct entities brought suit against the entities' auditors, asserting inter alia, that the auditors had breached their fiduciary duty to the entities in performing their audits.  Id. at 309.  When the auditors moved to dismiss the claims, the Delaware Court of Chancery engaged in a lengthy discussion of the doctrine of in pari delicto, which "precludes the court from hearing claims between wrongdoers" unless an exception applies.  Id. at 308. This entire discussion was premised on the court's unquestioned acceptance of the principle of imputation -- which imputed the wrongdoing of the entities' executive to the entities -- and would not permit the entities to sue a fellow wrongdoer unless the Trustee succeeded in locating an exception to the application of the in pari delicto doctrine.

The Shareholder Defendants attempt to distinguish Stewart by arguing that in order for an officer's intent to be imputed to the company, the officer must dominate the company.  This argument is unavailing and misconstrues Stewart.  The argument is derived entirely from one portion of the Stewart decision in which the court discusses an exception to an exception of the in pari delicto doctrine.

One exception to the application of the in pari delicto doctrine is the "highly unusual" case when the corporation's faithless servant acted "solely" to advance his own interests. Id. at 309 (citation omitted).  This adverse interest exception provides that "when the corporate agent responsible for the wrongdoing was acting solely to advance his own personal financial interest, rather than that of the corporation itself," his knowledge or intent will not be imputed to the principal. Id. at 303 (citation omitted).  The adverse interest exception is narrow: it covers only the "unusual case in which the allegations support a reasonable inference of the type of total abandonment of the corporation's interests that is characteristic of, for example, outright stealing from the corporation." Id. (citation omitted).

There is an exception to this exception, however.  Where the agent committing the fraud was the sole stockholder of the corporation, or otherwise "dominated" the corporation, courts

have recognized the sole actor rule as an exception to the adverse interest exception to the in pari delicto doctrine.  Id. at 310 (citation omitted).  "The sole actor rule overrides the adverse interest exception where the principal and the agent are the same, because it is absurd to presume that the one actor involved and affected somehow could keep secrets from himself, and because the principal, as the same sole owner, benefits from the fraud."  Id. at 310-11.  Thus, where a high-level officer or director solely owns or otherwise dominates the corporation, his knowledge will be imputed to the corporation even when he acts adversely to the corporation's interests.  Id. at 311.

The Shareholder Defendants argue that the sole actor rule is consistent with the bankruptcy court's ruling that a single dominating shareholder or officer's intent can be imputed to the company.  This argument ignores entirely the context in which Stewart discussed the sole actor rule.  As described above though, the sole actor rule is an exception to the adverse interest exception to the in pari delicto doctrine.  It applies only in situations where a sole shareholder or dominating officer is acting adversely to the corporation's interests and it permits the in pari delicto doctrine to be applied in such circumstances.

In sum, nothing in Stewart suggests that Delaware law does not impute an officer's knowledge and intent to the corporation

when that knowledge and intent are acquired within the scope of the officer's employment.  To the contrary, Stewart's entire discussion of the in pari delicto doctrine and its exceptions is premised on the fact that the wrongdoing by the executive in Stewart was imputed to the entities that employed him.  Thus, nothing in Stewart supports the Shareholder Defendants' argument that imputation is limited to circumstances in which an officer dominates the corporation.[5]  Again, the sole actor rule is simply an exception to an exception to the default rule that "[w]hen a corporation empowers managers with the discretion to handle certain matters and to deal with third parties, the corporation is charged with the knowledge of those managers." In re American Int'l Grp., 976 A.2d at 887 (citation omitted).

## II.  Interlocutory Appeal

The Shareholder Defendants also seek certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Section 1292 is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals."  Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996).  Section 1292(b) provides that

---

[5] The Shareholder Defendants have not relied upon the adverse interest doctrine in this litigation and have therefore waived this argument.  See Lyondell III, 2016 WL 40309837, at *9 n.14 (noting that "the adverse interest doctrine[] has not been relied upon by the parties here").

> When a district judge, in making in a civil action an
> order not otherwise appealable under this section,
> shall be of the opinion that such order involves a
> controlling question of law as to which there is
> substantial ground for difference of opinion and that
> an immediate appeal from the order may materially
> advance the ultimate termination of the litigation, he
> shall so state in writing in such order.  The Court of
> Appeals which would have jurisdiction of an appeal of
> such action may thereupon, in its discretion, permit
> an appeal to be taken from such order, if application
> is made to it within ten days after the entry of the
> order.

28 U.S.C. § 1292(b) (emphasis added).

Section 1292(b) certification should be "strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted).  The proponents of an interlocutory appeal bear the burden of showing that all three of the substantive criteria are met.  See Casey v. Long Island R.R. Co., 406 F.3d 142, 146 (2d Cir. 2005).

The Trustee's only surviving claim against the Shareholder Defendants is an intentional fraudulent conveyance claim under 11 U.S.C. § 548(a)(1)(A).  As a result, the imputation issue does present a controlling issue in this litigation, for it is the only basis upon which Lyondell can be charged with the "actual intent to hinder, delay, or defraud" its creditors.  11 U.S.C. § 548(a)(1)(A).  See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione

Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990) ("Although the resolution of an issue need not necessarily terminate an action in order to be controlling, it is clear that a question of law is controlling if reversal of the district court's order would terminate the action." (citation omitted)).  For similar reasons, resolution of the imputation issue on appeal would likely materially advance the ultimate termination of this litigation.

The Trustee disputes that the imputation issue is dispositive, arguing that its amended pleadings include details concerning the precise manner by which Smith used his strategic influence and positions to cause Lyondell to approve the merger. Therefore, the Trustee contends that it would be able to impute Smith's knowledge to the Lyondell Board even under the Shareholder Defendants' proposed "power to act" limitation.

It is unnecessary to resolve this factual dispute, since the Shareholder Defendants have failed to show that there is "substantial ground for difference of opinion," which is another requirement under 11 U.S.C. § 1292(b).  See also Casey, 406 F.3d at 146 (listing the requirements for interlocutory appeal).  The Shareholder Defendants do not identify a single conflicting authority within this circuit or any other circuit interpreting or applying Delaware agency imputation principles differently. Instead, the Shareholder Defendants rely solely upon the

24

bankruptcy court's decisions, which this Court reversed in
<u>Lyondell III</u>, as well as principles that this Court has already
considered and rejected in its original disposition of this
case.  Rather than identifying conflicting authority, Defendants
have instead used this motion as an opportunity to reiterate
legal positions that the Court already considered and rejected
in its original disposition of this case.  For this reason, the
Shareholder Defendants' motion for certification is denied.

### CONCLUSION

The Shareholder Defendants' August 10, 2016 motions for
reconsideration and certification are denied.  This case is
remanded for further proceedings.

Dated:    New York, New York
          October 5, 2016


_____
              DENISE COTE
      United States District Judge